CROFTON, *Ex'r appellant from a decree of the Judge of Probate, vs.* ILSLEY, *adm'r de bonis non.*

A will made and proved in a foreign country prior to *March* 20, 1821, may be filed in the Probate office here, though it be attested by only two witnesses ; notwithstanding the proviso in *Stat.* 1821, *ch.* 51, *sec,* 14, which, in this respect, is to be taken prospectively.

THIS was an appeal from a decree of the Judge of Probate against receiving and filing a certified copy of the last will and testament of *James Dunn*, late of the city of *Dublin*, in *Ireland*.

Mr. *Dunn*, many years since, resided in this county, where he left personal estate, on which administration had been granted to another person, and afterwards to the appellee. Whereupon *Crofton*, the executor of his will in *Ireland*, presented at the Probate office a copy of the will, duly proved and authenticated there, and prayed that the same might be filed here, pursuant to the law of this State, and that a letter testamentary might be granted to him. This was refused by the Judge, on the ground that the will being attested by only two witnesses, it was not within

Crofton v. Ilsley.

the terms of *Stat.* 1821, *ch.* 51, *sec.* 14, which admits the filing of such foreign wills only as are attested by three witnesses, like those made by virtue of the law of this State. It was contended by the petitioner that his right to file the will accrued under the statute of Massachusetts of 1785, *ch.* 12, which authorized the filing of *any* foreign will which had been duly proved in a foreign country, Mr. *Dunn* having died before the separation of Maine from Massachusetts ; and that the right, being thus vested, could not be taken away ; but the Judge was of opinion that the stat* utes on this subject were to be expounded as all other statutes conferring jurisdiction, which it was always in the power of the legislature to modify or take away at pleasure ; and that the right to call on the Probate Court to take cognizance of a will not executed as the act requires, stood on no better foundation than the right to require another Court to sustain an action, after its jurisdiction of such causes had been taken away.

Various reasons of appeal were filed, all tending to the point taken at the Probate Court, and stated above.

*Fessenden, Daveis* and *Deblois* argued for the appellant,—1. that the disposition and succession of personal property are regulated, not by the law of the country in which it is locally situated, but by that of the testator's country or domicil. To this point they cited *Vattel b.* 2, *c.* 7, *sec.* 85, *cap.* 8, *sec.* 109, 110, 111. *Voet. Comm. lib.* 38, *tit.* 17, *sec.* 34. *Vinnius Select. quæst. lib.* 2, *cap.* 19. *Denisart. Collect. de juris domicilii sec.* 3. 4. *Bynkershoek. quæst. priv. juris lib.* 1, *cap.* 16, *p.* 334, 335. *Erskine's Inst. b.* 3, *tit.* 9, *ch.* 4. 1 *Wooddes. lect.* 385. *Huber, cap. de conflictu legum tom.* 2 *lib.* 1 *tit.* 3, *sec.* 15, *ib. lib.* 2, *tit.* 4, *sec.* 1, 5. *ib. tom.* 3, *lib.* 20, *tit.* 4, *and lib.* 42. *tit.* 3, 4, 5, 7. *Coppen v. Coppen* 2 *P. Wms.* 293. *Fonbl.* 441. *Bovey v. Smith* 1 *Vern.* 85. *Sill v. Worswick* 1 *H. Bl.* 690. *Hunter v. Potts* 4 *D. & E.* 192. *Smith v. Buchanan* 1 *East* 11. *Porter v. Brown* 5 *East.* 131. *Bempde v. Johnstone* 3 *Ves. jr.* 198. *Phillips v. Hunter* 2 *H. Bl.* 405. *Bruce v. Bruce* 2 *B. & P.* 229. *Thorne v. Watkins* 2 *Ves.* 35. *Piper v. Piper Ambl.* 25. *Burn v. Cole* 6 *Bro. Parl. Ca.* 584, 601. *ib.* 550, 577. *Prec. Chan.* 207. *Somerville v. Somerville* 5 *Ves.*

786. And this position has been fully recognized and adopted by the courts in this country in the following cases. *Goodwin v. Jones* 3 *Mass.* 517. *Dawes v. Boylston* 9 *Mass.* 337. *Richards v. Dutch* 8 *Mass.* 506. *Stevens v. Gaylord* 11 *Mass.* 256. *Dublin v. Chadbourne* 16 *Mass.* 441. 9 *Cranch* 191. *Harvey v. Richards* 1 *Mass.* 408. *Desebats v. Berquier* 1 *Bin.* 345. *United States v. Crosby* 7 *Cranch* 115. *Robinson v. Campbell* 3 *Wheat.* 212. *Dixon v. Ramsay* 3 *Cranch* 319.

2. They contended that the rights of the parties under this will were vested by the death of *Dunn* many years ago, while the statute of Massachusetts authorizing the filing of every foreign will was in force ; and this right the legislature could not take away. All wills made and consummated by the death of the testator prior to the passing of the *Stat.* 1821, *ch.* 51, may be proved under the former law, under which the right to file this will became vested. The statute of Maine must therefore receive a construction wholly prospective. Prior to its enactment, a will of personal property was good, though attested by two witnesses only ; and if such a will, legally made at the time, were now offered for probate, the Judge would be bound to receive it. If this be true as to domestic wills, it is equally so as to those made abroad ; for both are placed, by our statute, on the same footing. *Pro. Ken. Pur. v. Laboree* 2 *Greenl.* 275. *Dash v. Van Kleick* 9 *Johns.* 477. *Puffend. Droit Nat. lib.* 1 *cap.* 6, *sec.* 6.

*Greenleaf,* for the appellee, did not controvert the position that personal property was to be distributed by the law of the testator's domicil; but denied its application to the case at bar ; which he said was a question of remedy, merely, and did not touch vested rights. The permission to file any foreign will was but an indulgence, in the nature of an *exequatur*; which the legislature might at any time withdraw, modify, or repeal. By the statute of Massachusetts every will, originally proved in a foreign country, might be filed here, and the executor be recognized in that character in suits in our courts. The legislature of Maine, at the revision of the statutes might lawfully have omitted this provision ; giving the Judges of Probate no power to receive

Crofton *v.* Ilsley.

probate of foreign wills ; nor to grant letters testamentary but to our own citizens. Had this jurisdiction been thus wholly abolished, where would have been the right to file any foreign will ? But instead of abolishing the jurisdiction, they have limited it to wills attested, like those of our citizens, by three witnesses, excluding all other testamentary papers. This regulation does not abrogate any foreign wills ; nor impair any rights vested under them. It merely changes the mode by which the executor is to obtain the property, to distribute in his own country. The bond given to the Judge of Probate by the administrator *de bonis non,* is a sufficient protection to the interest of all persons concerned. Though the want of a letter testamentary may prevent the executor from suing in our courts in that character ; yet the certified copy of the will is plenary evidence of his right to receive the balance of the effects under a decree of distribution, for the benefit of the legatees ; or of their right to a decree directing it to be paid to themselves. The rights of the legatees, in the one mode or the other, would always be safe, under the power of the Judge of Probate, and of this court. And if a suit were necessary on the administration bond, it would of course be brought in the name of the Judge, for the benefit of the party entitled to the money. Indeed the executor himself would always be enabled, under such circumstances, to obtain a letter of administration, ancillary to that granted abroad, and thus retain the effects in his own hands.

The rights of legatees being thus secured, the question is reduced to a matter of form ;—whether they shall receive their money by a decree of the Judge of Probate ordering the administrator to pay it to them,—or to the executor as their agent or representative, for their use ;—or whether he shall first be clothed with the powers of an executor to sue in our courts. And this subject the legislature had the same right to regulate, that they have to change the mode of remedy in any other case ; concerning which no doubt has been suggested.

After the argument, which was in *April* last, the cause being continued for advisement, the opinion of the court was now delivered by

Weston J. By the laws of most civilized countries, to which possibly no exception now exists, the disposition of the personal estate of any one deceased, is determined by the law of his domicil. With regard to real estate ; the tenure by which it may be holden, the mode of enjoyment, the instruments and solemnities, by which it may be transferred, and the right of succession thereto, upon the decease of the owner are uniformly regulated by all nations, possessing regular governments, so far as we know, by the *lex rei sitæ.*

In relation to personal property owned by persons resident abroad, who had deceased, after making a testamentary disposition thereof, according to the law of their domicil, proved and allowed by the regular foreign jurisdiction, the laws of Massachusetts, prior to the separation, had prescribed a mode of giving effect to such dispositions, without reuqiring any particular mode of execution or authentication abroad. The statute contained a clause, providing that nothing therein "shall be " construed to make valid any will or codicil, that is not attested " and subscribed in the manner the laws of this commonwealth " direct, nor to give operation and effect to the will of an alien " different from that which such will would have had, before the " passing of this act." A prior statute of Massachusetts had prescribed, that wills devising lands, tenements, and hereditaments, should be attested by three witnesses ; but contained no provision as to the attestation of wills of personal estate only.

In the revision of the general statute laws, which was made in this state in 1821, it was deemed a convenient mode to digest and arrange into one act, statutes relating to the same subject matter which had passed at successive periods. In regard to wills, the Legislature thought proper to abolish the distinction, which had previously existed, between wills of real and of personal estate ; and to require the same attestation in the latter as in the former. The proviso, before referred to, in the act of Massachusetts was continued, probably without con-

sidering that, in the connexion in which it now stands, in the statute of Maine, its most obvious construction would seem to require, that the attestation of three witnesses was deemed necessary in a foreign will of personal estate ; although without such attestation, it might be valid by the law of the testator's domicil, of which the probate by the foreign jurisdiction, is the conclusive and only evidence. As our laws in this particular, may generally be unknown to the testator abroad, and as it is not easy to conceive that our legislature were unwilling to give full effect to the right, now so universally recognized, of disposing of personal property, in conformity with the laws of the country, where the deceased had his domicil, we are not inclined to believe that they intended to introduce a provision, inconsistent with this principle. Whether the words of the proviso warrant a construction giving effect to such wills, not attested as our laws require, or whether further legislation upon the subject may not be found expedient, we give no opinion ; as in the view we have taken of the case before us, the determination of this point is not necessary to its decision.

In the revised statute of 1821, the legislature, so far as alterations were made in the prior law, intended to prescribe new rules for the future, not for the past. Upon every sound principle of construction, laws should be prospective in their operation. The past, when private rights are concerned, is not within the legitimate scope of legislation ; and although the tense used, according to the strict rules of grammatical construction, may seem to regard the past, yet this often arises from considering events, then future, as past in reference to proceedings provided for and regulated, which must necessarily succeed these events in the order of time. This results as well from the imperfection of language, as from a want of attention and accuracy in the use of it.

With regard to wills made prior to the enactment of the statute of Maine, which had become consummate by the death of the testator, and which had been made according to existing laws, continuing in force to the period of his decease, it never could have been the design of the Legislature to vacate and annul them

and to leave the estate bequeathed to pass in different channels ; thus defeating the lawful intentions of the testator. If they had power to do this, nothing short of the most express and unequivocal language could justify such a construction We are satisfied that the provision requiring the attestation of wills of personal property by three witnesses, must be deemed prospective in its operation; and that it does not affect such as had become consummate prior to the passage of the law. If the will in question had been a domestic will, it was entitled to probate ; and there is therefore nothing in the proviso to prevent its being filed and recorded as a foreign will, in the probate office in this county.

In conformity with this opinion, the decree of the Judge, in the court below, is reversed ; and the case remitted to him, with a direction that he permit a copy of the will and codicil of the said *James Dunn*, with the probate thereof, to be filed and recorded in the probate office for the county of Cumberland ; and that he cause such further proceedings to be had in the premises, as to law may appertain.